Kristin A. Schuler-Hintz, Esq., Nevada SBN 7171
Christopher M. Hunter, Esq., Nevada SBN 8127
McCarthy & Holthus, LLP
9510 W. Sahara, Suite 110
Las Vegas, NV 89117
Phone (702) 685-0329
Fax (866) 339-5691
KHintz@mccarthyholthus.com
Attorney for Defendant, Quality Loan Service Corporation

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CAROLINE J. KARL,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>QUALITY LOAN SERVICE CORPORATION, a foreign entity, HSBC BANK, USA, NA, as Trustee for Merrill Lynch Alternative Note Asset Trust, Series 2007-A3, an unknown entity, AMERICA'S SERVICING COMPANY, an unknown entity, DOES 1 - 100 Inclusive, and all other persons unknown claiming any right, title, estate, lien or interest in the real property described herein.<br><br>　　　　　　Defendants. | CASE NO.: 3:10-cv-00473-RCJ-VPC<br><br>**QUALITY LOAN SERVICE CORPORATION'S MOTION FOR SUMMARY JUDGMENT** |

Defendant, QUALITY LOAN SERVICE CORPORATION ("Quality"), by and through its attorneys, McCarthy & Holthus, LLP, hereby moves for entry of summary judgment pursuant to Fed. R. Civ. P. 56.

This Motion is brought pursuant to Fed R. Civ. P. 56 on the grounds that the Complaint fail to create a justiciable issue of fact. Pursuant to Local Rule 7-2, any Response and/or Opposition to this motion must be filed with the court and served within 15 days after service hereof. Any Reply must be filed with the Court and served within 11 days after service of any

response or opposition. Failure to file a timely opposition may result in the granting of the instant motion without hearing.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, and upon all pleadings and documents herein, as well as any argument that may be presented at the hearing of this, or any other motions/matters; the Court is requested to take judicial notice as appropriate.

Dated: 8/17/2010

/s/*Christopher M. Hunter*
Christopher M. Hunter, Esq.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

#### FACTS AS ALLEGED IN THE COMPLAINT AND FROM PUBLIC RECORDS

Plaintiff owns the property at 8928 Wynne St., Reno, Nevada. (Complaint ¶ 1) (:Subject Property"). On November 3, 2006, Plaintiff executed a promissory note and deed of trust which listed Universal American Mortgage Company of California as the lender and Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary and nominee of the lender. The deed of trust was duly recorded in the official records of Washoe County, Nevada on November 17, 2006 as document number 3464578. A copy of the deed of trust is attached hereto as Exhibit 1.

Plaintiff defaulted on her loan (Complaint ¶ 10). On May 4, 2010, Quality, acting as agent for the beneficiary and not as a substitute trustee, recorded a notice of breach and default and of election to cause sale of real property under deed of trust as document number 3877996. A copy is attached as Exhibit 2. Attached hereto as Exhibit 3 is an assignment of the deed of trust recorded on June 14, 2010 as document number 3891232. This document

was signed by MERS as nominee for Universal American Mortgage Company of California and transferred the beneficial interest in the deed of trust to Defendant, HSBC Bank USA, National Association, as Trustee.

All exhibits referenced herein are attached to this Motion. Quality respectfully requests judicial notice of the deed of trust, as well as the other exhibits. Under Federal Rule of Evidence 201, a court may judicially notice matters of public record. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). All exhibits hereto should be judicially noticed because they are a public record in the Washoe County Recorder's office.

The foreclosure was never completed. Plaintiff commenced this action by filing a Complaint on May 24, 2010 in state court. Quality removed the action on July 29, 2010. Quality now requests that summary judgment be entered in its favor on the grounds that there are no justiciable issues of fact.

## II.

### LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P.56.

The party moving for summary judgment has the initial burden of showing the absence of a genuine issue of material fact. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 26 L. Ed.2d 142, 90 S. Ct. 1598 (1970); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982), cert. denied, 460 U.S. 1085, 76 L. Ed.2d 349, 103 S. Ct. 1777 (1983). A material issue of fact is one that affects the outcome of the litigation and requires a trial to

resolve the differing versions of the truth. See *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 105-06 (9th Cir. 1982). Once the movant's burden is met by presenting evidence which, if uncontroverted, would entitle the movant to a directed verdict at trial, the burden then shifts to the respondent to set forth specific facts demonstrating that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 91 L. Ed.2d 202, 106 S. Ct. 2505 (1986).

If the party seeking summary judgment meets its burden, then summary judgment will be granted unless there is significant probative evidence tending to support the opponent's legal theory. *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 20 L. Ed.2d 569, 88 S. Ct. 1575 (1968). reh'g denied, 393 U.S. 901, 21 L. Ed.2d 188, 89 S. Ct. 63 )1968); *Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270 (9th Cir. 1979.* Parties seeking to defeat summary judgment cannot stand on their pleadings once the movant has submitted affidavits or other similar materials. Affidavits that do not affirmatively demonstrate personal knowledge are insufficient. *British Airways Bd. V. Boeing Co.*, 585 F.2d 946, 952 (9th. Cir. 1978), cert. denied, 440 U.S. 981, 60 L. Ed.2d 241, 99 S. Ct. 1790 (1979), reh'g denied, 441 U.S. 968, 60 L.Ed.2d 1074, 99 S Ct. 2420 (1979). Likewise, "legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment." *Id*.

### III.

#### ARGUMENT

**A. Plaintiff Cannot Declare the Foreclosure Process Void**

The sale in this case never took place. However, to void the sale or otherwise declare a defect in the foreclosure process, Plaintiff would first have to establish a right to set aside

4

the foreclosure sale.  Under Nevada law, such a sale may only be voided if the trustee or other authorized person did not substantially comply with the statutory provisions, the plaintiff brings suit within 90 days of sale, and a *lis pendens* is recorded. *See* Nev. Rev. Stat § 107.080(5)(a)-(c). Plaintiff alleges a variety of purported errors in the foreclosure process; however, the publicly recorded foreclosure notices show that Quality substantially complied (at a minimum) with the non-judicial foreclosure statute.  Paragraphs 13A through E of the Complaint allege the notice of default ("NOD") (Ex. 2) was defective in the following respects:

> A. The NOD failed to specify the amount of the default;
> B. The NOD failed to specify the action required to cure the default;
> C. The NOD failed to specify the date by which the default may be cured;
> D. The NOD failed to advise the borrower of his right to have enforcement of
>    the security instrument discontinued if they meet certain conditions;
> E. The NOD stated that the beneficiary under the deed of trust had already
>    declared all sums secured immediately due; and
> F. The NOD failed to unequivocally state that the Plaintiffs have the
>    unqualified right to cure the default and reinstate the mortgage.

Plaintiff alleges that these failings mean the sale was in violation of the deed of trust. Plaintiff misunderstands the deed of trust and pertinent law, however. First, the deed of trust does not provide that any of the listed information must be in the notice of default that is mandated by Nevada statute.  Rather, it merely requires the lender to provide the designated notice "prior to acceleration," with no further mention of how such notice is to be given. (Ex. 1, paragraph 22).   When "the words of the statute have a definite and ordinary meaning, this court will not look beyond the plain language of the statute, unless it is clear that this meaning was not intended."  *State v. Quinn*, 117 Nev. 709, 713, 30 P.3d 1117, 1120 (2001); see also *Glover v. Concerned Citizens for Fuji Park*, 118 Nev. 488, 50 P.3d 546, 548 (2002)(stating that "it is well established that when the language of a statute is unambiguous,

5

a court should give that language its ordinary meaning"). However, if a statute "is ambiguous, the plain meaning rule of statutory construction" is inapplicable, and the drafter's intent "becomes the controlling factor in statutory construction." *Harvey v. District Court*, 117 Nev. 754, 770, 32 P.3d 1263, 1274 (2001). An ambiguous statutory provision should also be interpreted in accordance "with what reason and public policy would indicate the legislature intended." *McKay v. Bd. of Supervisors*, 102 Nev. 644, 649, 730 P.2d 438, 442 (1986).

Under the plain words of the deed of trust, it is appropriate to give such notice of potential acceleration separately from the notice of default, *e.g.*, by letter. Plaintiff has not alleged that Defendant, America's Servicing Company, the servicer of the loan, failed to give her the notice called for in paragraph 22 of the deed of trust, only that it was not in the recorded notice of default.

Second, even if Plaintiff was correct that there had been a failure to comply with the technicalities of the deed of trust, Nevada law does not make a sale improper based on such a violation. A sale may only be set aside for failure to substantially comply with the *statutory* requirements. Nev. Rev. Stat. § 107.080(5). Plaintiff has not pled any facts that would support such a finding here.

First, there must be a breach of the obligation. *See* Nev. Rev. Stat. § 107.080(1). Plaintiff never does allege in the complaint that the loan was in default. Second, the trustor or other pertinent person must fail to make good the deficiency for over 35 days after the notice of default is recorded. Nev. Rev. Stat. § 107.080(1)(a)(2). Third, a sale must not take place until at least three months have elapsed since the recording of the notice of default. Nev. Rev. Stat. § 107.080(3). The notice of default was recorded on May 4, 2010. The sale

never took place. But it is already well beyond the 35 day minimum period to cure and over five months after recording. The second and third requirements are therefore satisfied.

Fourth, a notice of default must describe the deficiency in performance constituting a breach. Nev. Rev. Stat. § 107.080(3). This notice of default complies by indicating that Plaintiff failed to pay interest and principal due on and after February 1, 2010. (Ex. 2) Fifth, after expiration of the three-month period, the trustee must then give notice of the time and place of sale by personal service or mail to the trustor (as well as anyone else entitled to notice), by posting the notice for 20 days in three places in the township or city in which the property is located and publishing notice in the newspaper. Nev. Rev. Stat. § 107.080(4)(a)-(c). Plaintiff does not allege that the trustee failed to comply with this provision.

Plaintiff pleads that the notice of default did not advise them of her "unqualified" right to have enforcement of the security instrument discontinued at any time before five days prior to the sale. However, Plaintiff had no such unqualified right. On the contrary, her right to have the enforcement of the security instrument discontinued was very *qualified*; it could only be exercised by, *inter alia*, bringing the loan current on all payments. (*See* Ex. 1, ¶ 19.) Quite simply, there is no such right – qualified or unqualified – in Nev. Rev. Stat. § 107.080, meaning it cannot serve as the grounds to set aside the foreclosure.

Because the foreclosure was proper as far as it proceeded and NRS 107.080 was substantially complied with, the first cause of action for declaratory relief should be dismissed.

**B.   Quality does not have to be licensed as a debt collector**

Quality acted as the foreclosure trustee in this matter. It is not licensed as a debt collector because it is not required to do so. Plaintiff is asking this Court to legislate

7

from the bench by requiring a new level of regulation for certain entities that currently does not exist.

The provisions of NRS 80.015 provide, in pertinent part, as follows:

**NRS 80.015  Activities not constituting doing business.**
   1. For the purposes of this chapter, the following activities do not constitute transacting business in this State:
      (a) Maintaining, defending or settling any proceeding;
. . .
      (g) Creating or acquiring indebtedness, mortgages and security interests in real or personal property;
      (h) Securing or collecting debts or enforcing mortgages and security interests in property securing the debts;
      (i) Owning, without more, real or personal property;
   . . .

It is well established that the activity of non-judicial foreclosure is not "debt collection" under the FDCPA. *Hulse v. Ocwen Fed. Bank, FSB*, 195 F. Supp. 2d 1188 (D. Or. 2002).  The reason for this rule is that the object of foreclosure is not the collection of money: "Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property." *Id.* At 1204. Because foreclosure is not debt collection under the FDCPA, "any actions taken . . . in pursuit of the actual foreclosure may not be challenged as FDCPA violations." *Id.*

The purpose of the notice of default is to afford borrowers with notice of their default and the lender's election to sell the property in satisfaction of the debt.  See NRS 107.080(2)(b).  See generally *Ernestberg v. Mortgage Investors Group*, 2009 WL 160241, *4(D. Nev. 2009).  The notice of breach and election to sell is not an attempt to collect the

debt from the borrower. See *Maynard v. Cannon*, 650 F. Supp. 2d 1138, 1143-1144 (D. Utah 2006) (citing *Shimek v. Weissman, Nowack, Curry & Wilco,* P.C., 374 F.3d 1011 (11th Cir. 2004), stating "the filing of a lien by a creditor is a necessary step for securing payment of a debt"). It is an attempt to satisfy the borrower's obligation by resorting to property that secures the debt. Nevada statutes permit non-judicial foreclosure. See NRS 107.080. They require recordation of a notice of default to commence non-judicial foreclosure; and the notice of default must describe the deficiency in performance or payment. NRS 107.080(2)(b); NRS 107.080(3). Accordingly, recordation and mailing of the notice of default cannot violate FDCPA. See *Maynard* at 1144. (FDCPA is not so broad as to prohibit recordation of a notice of default). "The intent behind the FDCPA was to prohibit abusive collection practices, not to outlaw foreclosure when there is an express security agreement and breach of an obligation." See *Maynard* at 1143.

Further, citing *Maynard*, this Court has already stated that recording a notice of default and election to sell is not an attempt to collect a debt because the borrowers consented to make such a recordation upon default and this consent is given to the trustee where state law requires such recordation as part of the non-judicial foreclosure. *Charov v. Perry*, 2010 U.S. Dist. LEXIS 65798 (D. Nev. 2010).

Plaintiff also asserts violations under the Nevada collection company statute, NRS Chapter 649. Quality properly points out that there is no such body of law as the Nevada Debt Collection Practices Act. Nor has FDCPA been incorporated on a wholesale basis into Nevada law. The statute simply provides that "[a] violation of any provision of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 et seq. [("FDCPA")], or any regulation adopted pursuant thereto, shall be deemed to be a violation" of Nevada law. Nev.

Rev. Stat. § 649.370. The asserted violations are premised upon Plaintiff's allegation that Quality violated the FDCPA, and is therefore liable under Nevada law. Since Quality did not violate FDCPA it cannot have violated NRS 649.370.

Plaintiff also alleges that Quality must be licensed as a debt collector under Nevada law and that failure to be licensed constitutes a deceptive trade practice under NRS 598.0923 by way of NRS 41.600(2)(d). However, it follows that if Quality is not a debt collector under FDCPA Quality cannot have violated any Nevada state laws based upon an FDCPA violation. Further, NRS Chapter 649 governs collection agencies generally. NRS 649.385 provides as follows:

> **NRS 649.385  Investigation of verified complaint; verified answer; action by Commissioner after informal hearing.**
>   1. Upon the filing with the Commissioner of a verified complaint against any collection agency or manager, the Commissioner shall investigate the alleged violation of the provisions of this chapter.
>   2. If the Commissioner determines that the complaint warrants further action, the Commissioner shall send a copy of the complaint and notice of the date set for an informal hearing to the accused and the Attorney General.
>   3. The Commissioner may require the accused collection agency or manager to file a verified answer to the complaint within 10 days after service unless, for good cause shown, the Commissioner extends the time for a period not to exceed 60 days.
>   4. If at the hearing the complaint is not explained to the satisfaction of the Commissioner, the Commissioner may take such action against the accused as may be authorized by the provisions of this chapter.

As a result of the above, Plaintiff cannot allege that Quality must be licensed as a collection agency unless it first files a complaint with the Nevada Department of Financial Institutions to obtain a declaration under the above statute that licensing is required.

As a result of the above cited authority, there is no justiciable fact set forth in either the second or third claims for relief in the Complaint.

10

**C. Plaintiff has no viable claim under NRS 598D**

    **1. NRS 598D is inapplicable to this loan**

The general rule is that is that statutes are prospective only; unless it clearly, strongly, and imperatively appears from the act itself that the legislature intended the statute to be **retrospective** in its operation.  *See, e.g, State Ex Rel. Progress v. Court,* 53 Nev. 386, 2 P.2d 129 (1931).[1] No such **retroactive** intent appears in the amendments to NRS 598D.100(1)(b). Nor does any retroactive intent appear in the plain language of the statute, itself.  It is a long recognized tenet of statutory construction that "when the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it."[1] The language of NRS 598D.100(1)(b) states as follows:

> It is an unfair lending practice for a lender to:  …. (b) Knowingly or intentionally make a home loan, other than a reverse mortgage, to a borrower, including, without limitation, a low-document home loan, no-document home loan or stated-document home loan, without determining, using any commercially reasonable means or mechanism, that the borrower has the ability to repay the home loan…..

Said language requiring using a commercially reasonable means of verifying repayment was added in 2007 and made effective October 2007.  It is impossible for any lender originating a loan prior to have violated NRS 598D.100(1)(b) as the statutory requirement did not exist until then.  As such NRS 598D.100 (1)(b) is inapplicable to the case at bar because Plaintiff's loan originated in November, 2006.

    **2. There is no successor liability under NRS 598D**

Plaintiff has also failed to provide this Court with any basis to conclude that NRS 598D allows for successor liability.  NRS 598D.100 clearly states that "it is an unfair lending practice for a lender to . . . knowingly or intentionally **make a home loan to a borrower** . . . " NRS 598D. 100(b) (2003) (emphases added).  Furthermore, there is no legal authority to

---

[1] Quoting from, *Eggleston v. Costello* (*In re Estate of Thomas*), 116 Nev. 492 (2000)

conclude that NRS 598D.100 allows for successor liability, similar to TILA claims. As a result, Plaintiff has no basis to allege a claim based on NRS 598D.100 against Quality, a foreclosure trustee.

### 3. Plaintiff's claims under NRS 598D.100 are time barred

NRS 598D.110 provides that a lender is liable for treble damages for willfully engaging in unfair lending practices. NRS 598D.110. The title of this section specifically states "criminal and civil penalties". NRS 11.190(4)(b) imposes a two-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture, where the action is given to a person or the state, or both, except when the statute imposing it prescribes a different limitation." NRS 11.190(4)(b); *Edwards v. Emperor 's Garden Restaurant*, 122 Nev. 317, 327-28, 130 P.3d 1280, 1286-87 (2006).

In the case at bar, it is undisputed that Plaintiff's claim against Defendants was not filed until May, 2010, which is more than two years after the loan was originated. Dismissal of Plaintiff's claims will be appropriate, as the facts alleged by Plaintiff establish that the applicable statute of limitations for this type of action bar recovery. *Bank of Nevada v. Friedman*, 82 Nev. 417, 422, 420 P.2d 1, 4 (1966) ("When the complaint shows on its face that the cause of action is barred, the burden falls upon the plaintiff to satisfy the court that the bar does not exist.").

As a result of the foregoing, Plaintiff's fourth cause of action fails.

### D. Plaintiff cannot quiet title unless she pays the debt

Plaintiff is not entitled to a free home. Plaintiff cannot quiet title, because she has not discharged her debts. "A trustor cannot quiet title without discharging his debt. The cloud

---

[1] City of *Henderson v. Kilgore*, 131 P.3d 11 (2006) quoting from *City Council of Reno v. Reno Newspapers* 105

12

upon his title persists until the debt is paid." *Aguilar v. Bocci,* 39 Cal.App.3d 475, 478, 114 Cal.Rptr. 91 (1974) (citations omitted).  Plaintiffs' fifth cause of action is for Quiet Title. However, it is long established that a quiet title claim requires the Plaintiff to allege that the Defendant is unlawfully asserting an adverse claim to title to real property. *Union Mill & Mining Co. v. Warren* 82 F. 519, 520 (D. Nev. 1897); *Clay v. Scheeline Banking & Trust Co.,* 40 Nev. 9 (1916).  There is nothing in Plaintiff's Complaint that refutes the basic premise on which a notice of default was recorded , to wit, that the subject loan was in default for failure to tender payments as required by the note and deed of trust.

In Nevada, an action to quiet title to real property is permitted pursuant to Nev. Rev. Stat. § 40.010, which states, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to him, for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself. *Breliant v. Preferred Equities Corp*., 918 P.2d 314, 318 (Nev. 1996). Plaintiff appears to base her quiet title action upon the flawed legal theory involving the identification of MERS and the conspiracy theory that goes with it on her deed of trust.

In the U.S. District Court, District of Arizona, the court soundly rejected such a conspiracy theory and dismissed the plaintiffs' complaint with prejudice. *Cervantes, et al. v. Countrywide Home Loans, Inc., et al.*, 2009 WL 3157160, *10 (D. Ariz. September 24, 2009) (Slip Op.). In Cervantes, Judge Teilborg recognized that Plaintiffs' MERS conspiracy theory is completely baseless:

---

Nev. 886, 891 (1989)

> Plaintiffs allege that the MERS system is a "sham" beneficiary. Plaintiffs, however, have not directed this Court to any Arizona case that finds that the MERS system is fraudulent.
> More importantly, Plaintiffs have failed to allege what effect, if any, listing the MERS system as a "sham" beneficiary on the deed of trust had upon their obligations as borrowers. …Plaintiffs do not allege that they were somehow induced to enter into their loans on the basis that MERS was a genuine and not a "sham" beneficiary. Moreover, the Court fails to see how the MERS system commits a fraud upon Plaintiffs. . . . The fact that MERS does not obtain such rights as to collect mortgage payments or obtain legal title to the property in the event of non-payment does not transform MERS" status into a "sham." At most, Plaintiffs find the MERS system to be disagreeable and inconvenient to them as consumers. Such complaints, however, do not arise to the level of fraud, much less a conspiracy to commit fraud.

*Id*. at 15-17.

Numerous other courts have rejected similar theories that the involvement of MERS somehow automatically invalidates a proper non-judicial foreclosure and sale process. For example, in *Orzoff v. MERS,* No. 2:08-cv-01512-RCJ (D. Nev. Mar. 26, 2009), the federal district court of Nevada granted defendants' motion for Judgment on the Pleadings and rejected Plaintiffs' MERS based challenge to non-judicial foreclosure proceedings:

> Plaintiff's principal argument for declaratory relief is that MERS does not have standing as a beneficiary under the Loan Agreements and was not authorized to participate in the foreclosure proceedings under Nevada law. This Court has previously determined that MERS does have such standing. See, e.g., *Dunlap v. MERS*, No. 2:08-cv-918 (Jan. 5, 2009); *Beltran v. MERS*, No. 2:08-cv-1101 (Jan. 5, 2009). Courts around the country have held the same. See, e.g., *Johnson v. Mortgage Electronic Registration Systems, Inc.,* 252 Fed. Appx. 293 (11th Cir. 2007) (affirming grant of summary judgment to MERS on its foreclosure of plaintiff"s property); *Pfannenstiel v. Mortgage Electronic Registration Systems, Inc.*, No. CIV S-08-2609, 2009 WL 347716 (E.D. Cal. Feb. 11, 2009) (rejecting plaintiff"s claim that MERS lacked authority to commence foreclosure proceedings on plaintiff"s property); *Trent v. Mortgage Electronic Registration Systems, Inc.,* No. 3:06-cv-374, 2007 WL 2120262 (M.D. Fla. July 20, 2007) (granting MERS"s motion to dismiss plaintiff"s complaint challenging property foreclosure); *Smith v. Bank of New York, as Trustee*, 366 B.R. 149 (Bkrtcy. D. Colo. 2007) (holding that MERS,

> functioning as the nominee for the lender and its assigns, had standing to conduct foreclosure on behalf of the beneficiary).

*Orzoff,* Docket No. 32 at 9-10 (emphasis added).

Similarly, Judge Dawson rejected a similar claim in *Croce v. Trinity Mortgage Assurance Corp.*: 2009 U.S. Dist. LEXIS 89808, *8 (D. Nev. 2009):

> Plaintiffs' principal argument for declaratory relief is that MERS does not have standing as a beneficiary under the Note and Deed of Trust, and therefore, is not authorized to participate in the foreclosure proceedings. Plaintiffs have cited no authority that is controlling upon this Court that holds that MERS cannot have standing as a nominee beneficiary in connection with a non-judicial foreclosure proceeding under Nevada law. This Court has previously determined that MERS does have such standing [citing *Orzoff* and cases cited therein]. See also *MERS v. Revoredo,* 955 So. 2d 33, 34 n.2 (Fla. Ct. App. 2007) ("MERS…does not lack standing to foreclose"); *Elias v. HomeEQ Servicing*, 2:08-cv-1836 JCM, 2009 U.S. Dist. LEXIS 14907, at *3 (D. Nev. Feb. 25, 2009) (dismissing complaint alleging that MERS lacked standing to foreclose, concluding that "[t]he recorded deeds of trust, notices of foreclosure, and trustee"s deed upon sale confirms the standing of HomeEQ, Sutton and MERS to foreclose upon Elias" default.").
> In short, there is absolutely no authority suggesting that any Deed of Trust naming MERS as a beneficiary is per se invalid. Furthermore, Plaintiffs' unsupported assertions are not sufficiently pleaded to state a claim. See Fed. R. Civ. Pro. 8(a), and Fed. R. Civ. Pro. 9(b).

Thus, Plaintiff's Plaintiff's theory that the presence of MERS on the deed of trust magically morphs into a free and clear title on the Subject Property has been soundly rejected. The fifth cause of action should be dismissed.

## CONCLUSION

Plaintiff's Complaint conflates provisions in the deed of trust with the statutory requirements to set aside a trustee's sale. Here, the process complied with Nevada's requirements, leaving no grounds on which to void the foreclosure. Finally, there is no basis for requiring Quality to be registered in Nevada as a debt collectors because it has not

violated FDCPA. For the reasons set forth in this memorandum, Quality respectfully requests entry of summary judgment in its favor on all claims.

DATED:  August 17, 2010

                 McCarthy & Holthus, LLP

              By:  */s/Christopher M. Hunter*
                  Christopher M. Hunter, Esq.
                  Attorneys for Defendant

### CERTIFICATE OF MAILING

I hereby certify that on the 17h day of August, 2010, a true and correct copy of the foregoing Quality Loan Service Corporation's Motion for Summary Judgment was forwarded to all parties and counsel as identified on the Court generated Notice of Electronic Filing.

              *Ellen McAbee*
              An employee of McCarthy & Holthus, LLP