FILED ___ ENTERED
RECEIVED ___ SERVED ON
COUNSEL/PARTIES OF RECORD

DEC 2 9 2010

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

CAROLINE J. KARL,               )
                                )
            Plaintiff,          )
                                )
      vs.                       )         3:10-cv-00473-RCJ-VPC
                                )
QUALITY LOAN SERVICE CORP. et al., )            ORDER
                                )
            Defendants.         )
_____)

This case arises out the foreclosure of residential real property. Plaintiff has filed a Motion to Remand (ECF No. 9), and Defendant Quality Loan Service Corp. ("QLS") has filed a Motion for Summary Judgment (ECF No. 8). For the reasons given herein, the Court denies the motion to remand and grants the motion for summary judgment in part.

I.      FACTS AND PROCEDURAL HISTORY

Plaintiff Caroline J. Karl is the owner of real property located at 8928 Wynne St., Reno, Nevada, 89506, APN: 080-893-01 (the "Property"). (Compl. ¶ 1, May 24, 2010, ECF No. 1-2). Plaintiff does not allege facts concerning the terms of the promissory note or deed of trust ("DOT"), but simply notes that QLS recorded a Notice of Breach and Default and Election to Sell ("NOD") on May 4, 2010. (See id. ¶ 2). Plaintiff admits default, allegedly due to an upwardly adjusting interest rate on the note. (See id. ¶ 10). She cannot sell the home to satisfy the note, because due to the crash of the housing market the home is worth far less than the balance on the note. (Id.).

1      Defendant QLS attaches the DOT to its motion for summary judgment.  Plaintiff gave the

2   DOT on the Property to secure an adjustable-rate, thirty-year loan of $232,000. (*See* DOT 1–2,

3   Nov. 3, 2006, ECF No. 8-1, at 1; Adjustable Rate Rider 1, Nov. 3, 2006, ECF No. 8-1, at 17).

4   The lender and trustee under the DOT was non-party Universal American Mortgage Co. of

5   California ("UAMC"), and Mortgage Electronic Registration Systems, Inc. ("MERS") was listed

6   as the "nominee" and "beneficiary." (*See* DOT 1–2).  The interest rate on the note was fixed at

7   6.75% per annum until December 1, 2011, (*see* Adjustable Rate Rider 1), making Plaintiff's

8   allegation that her default was due to the adjustable nature of the note not only implausible, but

9   impossible.  QLS recorded the NOD on May 4, 2010. (*See* NOD 1, May 4, 2010, ECF No. 8-2).

10   On June 14, 2010, America's Servicing Co. ("ASC") recorded MERS' assignment of the DOT

11   (in its capacity as UAMC's nominee) from UAMC to HSBC. (*See* Assignment of DOT 1-2, June

12   14, 2010, ECF No. 8-3, at 1–2).

13      Plaintiff alleges several defects in the NOD.  First, she argues that the NOD was defective

14   because it failed, as required by paragraph 22 of the DOT, to notify her of the default or to

15   specify the fact of default, action required to cure it, a date thirty days or more thereafter by

16   which the default must be cured, and that failure to timely cure would result in acceleration of the

17   note and sale of the Property. (*See* Compl. ¶ 13.A–13.B).  Second, she argues that the NOD was

18   defective because it violated her right under paragraph 19 of the DOT to have enforcement of the

19   DOT discontinued prior to the earliest of five days before the sale, any existing pre-sale statutory

20   period of redemption, or entry of judgment enforcing the DOT. (*See id.* ¶ 13.C).  Plaintiff also

21   alleges in her affidavit that she cannot tell if the signatures on the documents provided in the

22   motion for summary judgment are hers without the original copies, (*see* Karl Aff. ¶ 6, Aug. 24,

23   2010, ECF No. 11-2), but this is not convincing.  The signatures are very clear and perfectly

24   legible, the copies are clearly mechanical reproductions, and production of the original

25   documents would not increase the clarity except perhaps to discern the color of the pen used to

1   sign. If Plaintiff cannot tell if these signatures are hers based on the copies adduced, the originals

2   will not assist, and a mechanically produced photocopy of a document is admissible as a

3   "duplicate." Fed. R. Evid. 1001, 1003. There is no genuine question as to the authenticity of the

4   relevant documents. Plaintiff's unlikely statement puts her on dangerous ground, having been

5   signed under penalty of perjury.

6        Plaintiff sued QLS; HSBC Bank, USA ("HSBC"); and ASC in state court on five causes

7   of action: (1) Declaratory Relief; (2) Debt Collection Violations Under Nevada Revised Statutes

8   ("NRS") Chapter 649; (3) Unfair and Deceptive Trade Practices Under NRS Chapter 598; (4)

9   Unfair Lending Practices Under NRS Chapter 598D; and (5) Quiet Title. Defendants removed

10  and have moved for summary judgment. Plaintiff has moved to remand.

11  **II.    LEGAL STANDARDS**

12      **A.    Federal Jurisdiction**

13      "The district courts shall have original jurisdiction of all civil actions where the matter in

14  controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is

15  between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)–(a)(1).

16          Except as otherwise expressly provided by Act of Congress, any civil action brought
            in a State court of which the district courts of the United States have original
17          jurisdiction, may be removed by the defendant or the defendants, to the district court
            of the United States for the district and division embracing the place where such
18          action is pending.

19  § 1441(a).

20          Promptly after the filing of such notice of removal of a civil action the defendant
            or defendants shall give written notice thereof to all adverse parties and shall file a
21          copy of the notice with the clerk of such State court, which shall effect the
            removal and the State court shall proceed no further unless and until the case is
22          remanded.

23  § 1446(d). Remand is permitted for lack of subject matter jurisdiction or defects in the removal

24  procedure. *See* § 1447(c).

25  ///

1    **B.    Summary Judgment**

2    The Federal Rules of Civil Procedure provide for summary adjudication when "the

3    pleadings, depositions, answers to interrogatories, and admissions on file, together with the

4    affidavits, if any, show that there is no genuine issue as to any material fact and that the party is

5    entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which

6    may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

7    (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable

8    jury to return a verdict for the nonmoving party. *See id.*  A principal purpose of summary

9    judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*,

10   477 U.S. 317, 323–24 (1986).  In determining summary judgment, a court uses a burden-shifting

11   scheme:

12         When the party moving for summary judgment would bear the burden of proof at
           trial, it must come forward with evidence which would entitle it to a directed verdict
13         if the evidence went uncontroverted at trial.  In such a case, the moving party has the
           initial burden of establishing the absence of a genuine issue of fact on each issue
14         material to its case.

15   *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations

16   and internal quotation marks omitted).  In contrast, when the nonmoving party bears the burden

17   of proving the claim or defense, the moving party can meet its burden in two ways: (1) by

18   presenting evidence to negate an essential element of the nonmoving party's case; or (2) by

19   demonstrating that the nonmoving party failed to make a showing sufficient to establish an

20   element essential to that party's case on which that party will bear the burden of proof at trial. *See*

21   *Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary

22   judgment must be denied and the court need not consider the nonmoving party's evidence. *See*

23   *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

24   If the moving party meets its initial burden, the burden then shifts to the opposing party to

25   establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

1    475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party

2    need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

3    claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

4    versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

5    626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

6    by relying solely on conclusory allegations that are unsupported by factual data. *See United*

7    *States v. Denlinger*, 982 F.2d 233, 237 (7th Cir. 1992) ("Neither summary judgment nor directed

8    verdict can be avoided by simply saying, 'nevertheless, it is not so.'"); *Taylor v. List*, 880 F.2d

9    1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and

10    allegations of the pleadings and set forth specific facts by producing competent evidence that

11    shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

12        At the summary judgment stage, a court's function is not to weigh the evidence and

13    determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477

14    U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are

15    to be drawn in his favor." *Id.* at 255.  But if the evidence of the nonmoving party is merely

16    colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

17    **III.      ANALYSIS**

18        **A.      Federal Jurisdiction**

19        Plaintiff correctly notes that there is no federal question in this case but does not allege a

20    lack of diversity.  Plaintiff argues only that: (1) the Court lacks jurisdiction over the case because

21    a state court already has in rem jurisdiction over the Property; and (2) the Court should abstain

22    under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).

23        First, this Court does not lack jurisdiction simply because the case originated in state

24    court.  Plaintiff fails to distinguish between the situation where a federal action is parallel to a

25    continuing state court action, *see Kline v. Burke Constr. Co.*, 260 U.S. 226 (1922), and the

1   situation here, where the state action is removed to federal court and thereby ceases to exist in the

2   state court. The distinction is neither complex nor obscure. In *Kline*, Kline had brought an

3   equitable action in state court after Burke had brought an action at law in federal court. *See Kline*,

4   260 U.S. at 227. Kline filed a counterclaim in federal court for the same claims he had brought

5   in the state court suit. *See id.* at 228. Burke reciprocated by filing a counterclaim in the state

6   court action for the same claims it had brought in federal court. *See id.* There then existed

7   parallel federal and state court actions with identical claims and counterclaims, but where the

8   plaintiff in federal court was the defendant in state court, and vice versa. *See id.* Burke then

9   removed the state court action based on diversity and federal question jurisdiction. *See id.* The

10  *Kline* Court noted:

11          It is settled that where a federal court has first acquired jurisdiction of the
            subject-matter of a cause, it may enjoin the parties from proceeding in a state court
12          of concurrent jurisdiction where the effect of the action would be to defeat or impair
            the jurisdiction of the federal court. Where the action is in rem the effect is to draw
13          to the federal court the possession or control, actual or potential, of the res, and the
            exercise by the state court of jurisdiction over the same res necessarily impairs, and
14          may defeat, the jurisdiction of the federal court already attached. The converse of the
            rule is equally true, that where the jurisdiction of the state court has first attached, the
15          federal court is precluded from exercising its jurisdiction over the same res to defeat
            or impair the state court's jurisdiction.
16
                . . . .
17
            "It is settled that, when a state court and a court of the United States may each take
18          jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the
            exclusion of the other, until its duty is fully performed, and the jurisdiction involved
19          is exhausted." . . . The rule is limited to actions which deal either actually or
            potentially with specific property or objects.
20
21  *Id.* at 229–32 (quoting *Covell v. Heyman*, 111 U.S. 176 (1884)). The Court then ruled that the

22  court of appeals had no authority to enjoin the state court proceedings because the federal court's

23  jurisdiction over control of a res was not threatened.

24          Plaintiff fails to note that in the present case, there was never any parallel state

25  proceeding. The state proceeding no longer exists by virtue of the case's removal to federal

    court. *See* 28 U.S.C. § 1446(d) ("Promptly after the filing of such notice of removal of a civil

1   action the defendant or defendants shall give written notice thereof to all adverse parties and shall

2   file a copy of the notice with the clerk of such State court, which shall effect the removal *and the*

3   *State court shall proceed no further unless and until the case is remanded.*" (emphasis added)).

4   This Court's jurisdiction over the case therefore does not threaten the continuing jurisdiction of

5   the state court over any res, because Congress has provided that removal divests the state court of

6   jurisdiction. Had Defendants filed a second action in federal court after the state court obtained

7   in rem jurisdiction in the present case, dismissal of that second action would perhaps have been

8   appropriate under *Kline*, but Defendants have removed the state court action, not filed a

9   duplicative action in federal court while the state court action was pending. The use of the

10  removal statute does not implicate the problem of parallel in rem proceedings, because it simply

11  moves the proceedings across the street, so to speak, without duplicating them and creating a risk

12  of competing decrees over a res. Plaintiff's reading of the law would prevent the removal of any

13  in rem proceeding. Neither the removal statute nor *Kline* indicates such a broad limitation on

14  removal jurisdiction.

15          Second, Plaintiff argues that the Court should abstain under *Colorado River*. That case

16  involved parallel state and federal proceedings concerning water rights in Colorado. The United

17  States filed suit in federal court to secure its rights to certain water as against approximately 1000

18  individual users. One of the defendants in the federal action then filed a parallel suit in state

19  court, and several other defendants filed a motion to dismiss the federal action for lack of

20  jurisdiction. The district court granted the motion. The Supreme Court held that federal

21  jurisdiction was not lacking and that no doctrine required the federal district court to abstain, but

22  it ruled that dismissal was appropriate based on the need to avoid duplicative litigation and

23  "(w)ise judicial administration, giving regard to conservation of judicial resources and

24  comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817. *Colorado River* did

25  not involve removal of a case, but rather parallel proceedings. Even if there had been parallel

1  proceedings here, *Colorado River* is tightly fact-bound to the water-rights context, *see Arizona v.*

2  *San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 571 (1983), and anomalous even within the

3  abstention cases because it permitted a federal court to dismiss a case over which it in fact had

4  jurisdiction and with respect to which abstention was not appropriate, *see Colorado River*, 424

5  U.S. at 821–26 (Stewart, J., dissenting). *Colorado River* in no way supports abstention here.

6         This Court would like nothing more than to remand en masse the mountain of removed

7  foreclosure actions currently clogging its docket, but the Court has a duty to hear all cases over

8  which it has jurisdiction, and a full docket is not a valid ground for abstention, particularly where

9  remand will not conserve judicial resources overall but simply serve to dump a heavy load of

10  cases onto the state courts.

11         **B.      Summary Judgment**

12         **1.      Declaratory Relief**

13         **a.      Improper Foreclosure Under NRS Section 107.080**

14         Plaintiff seeks a declaration that the NOD is "null and void." The most common statutory

15  defect in foreclosure in Nevada occurs when a foreclosing entity fails to adhere to NRS section

16  107.080, recording a NOD before it has been named as the trustee, and without any evidence of

17  agency on behalf of the trustee or beneficiary of the underlying debt at the time of recordation.

18  *See* Nev. Rev. Stat. § 107.080(2)(c). Plaintiff does not allege a violation of this statute, but rather

19  alleges that the NOD failed to include certain notices as required under the DOT.

20         QLS was apparently neither the trustee nor the beneficiary when it recorded the NOD.

21  However, it claimed on the NOD to have been "AGENT FOR BENEFICIARY," (*see* NOD 3),

22  and it identified the beneficiary as UAMC, (*see id.* 1). The only evidence in the record as to the

23  identity of the beneficiary at the time the NOD was recorded is the DOT itself, which names

24  UAMC as the lender, making it the beneficiary as a matter of law, regardless of the DOT's

25  language about MERS being a "beneficiary." Although MERS is not a beneficiary, its agency for

1    the beneficiary under the DOT extends to administering the DOT for purposes of foreclosure.

2    Whether UAMC directly commanded QLS to file the NOD or MERS commanded QLS to do so,

3    there is no defect in foreclosure here under section 107.080(2)(c), as there is in cases where a

4    purported trustee who is named nowhere on the DOT, and for whom evidence of substitution as

5    trustee appears nowhere, files a NOD. Plaintiff adduces no contrary evidence. There is no

6    question of fact that QLS filed the NOD as the agent of MERS, who was the agent of the

7    beneficiary UAMC, and the foreclosure was therefore not improper under section 107.080(2)(c).

8           **b.      Improper Foreclosure Under the DOT**

9           **i.      Paragraph 22 of the Deed of Trust**

10           The question remains whether foreclosure was improper under the terms of the DOT.

11   Paragraph 22 requires (in all bold print) that prior to acceleration of the loan following default,

12   the lender must notify the borrower of default, action required to cure, a date at least thirty days

13   thereafter by which to cure, and that failure to timely cure may result in acceleration. (*See* DOT

14   ¶ 22). QLS argues that such notices need not be in the NOD itself, but may be given via other

15   methods. QLS then argues that because Plaintiff does not allege that such notices were not

16   given, but only that they were not included in the NOD, it is entitled to summary judgment. The

17   text of the DOT supports QLS' reading of it; however, QLS' characterization of Plaintiff's

18   allegations are not convincing. Although Plaintiff indeed alleges that the NOD itself did not

19   contain these notices, it is a reasonable inference from the Complaint that Plaintiff means to

20   allege she never received such notices elsewhere, either. QLS provides no evidence of having

21   provided such notices by separate communication, and they do not appear in the NOD. Rather,

22   in addition to the fact of and amount of default, (*see* NOD 1), the NOD instructs Plaintiff:

23   "NOTICE. You may have the right to cure the default . . . . To determine if reinstatement is

24   possible and the amount, if any, to cure the default, contact: [ASC's address and telephone

25   number]," (*id.* 2). This is not sufficient to satisfy the requirement in paragraph 22 of the DOT

1   that such information be directly provided to the borrower.  Under the plain language of the

2   DOT, the lender bears the burden of providing certain notices concerning default and cure to the

3   borrower.  The borrower does not bear the burden of seeking out the information.

4        QLS also argues that a sale may only be set aside for failure substantially to comply with

5   the statutory requirements, not the DOT itself.  But neither party alleges a sale, and there is no

6   evidence of a sale.  Plaintiff has sued to stop foreclosure before sale and seeks a declaration that

7   the NOD is invalid because it fails to comply with the terms of the DOT.  There remains a

8   genuine issue of material fact as to whether the NOD was defective under the terms of the DOT,

9   and the Court denies summary judgment on this basis.

10       ii.     **Paragraph 19 of the Deed of Trust**

11       Plaintiff argues that the NOD was also defective because it violated her right under

12  paragraph 19 of the DOT to have enforcement of the DOT discontinued (under certain

13  conditions) prior to the earliest of five days before the sale, any existing pre-sale statutory period

14  of redemption, or entry of judgment enforcing the DOT. (*See* Compl. ¶ 13.C).  The problem with

15  Plaintiff's allegations is that those "certain conditions" are unambiguous: (1) the borrower must

16  pay all sums due as if acceleration had never occurred; (2) borrower must cure default; (3)

17  borrower must pay expenses of enforcing the DOT; and (4) must take other reasonable actions to

18  secure the lender's interest. (*See* DOT ¶ 19).  Although there appears to be no question that

19  Plaintiff has not complied with these conditions, there remains a question of fact as to whether

20  acceleration was proper in the first instance under paragraph 22.  If it was not, Plaintiff need not

21  even argue under paragraph 19.

22       2.      **Debt Collection Violations Under Nevada Revised Statutes ("NRS") Chapter
                 649**

23

24       Plaintiff alleges violations of NRS section 649.370, which creates an independent state

    law cause of action for violations of the Fair Debt Collection Practices Act ("FDCPA").

25

    Specifically, Plaintiffs allege that QLS violated FDCPA by failing to include certain language in

1   the NOD mandated by 15 U.S.C. §§ 1692e(11) and 1692g(a)(1)–(5), by making a false and

2   misleading attempt to collect a debt by failing to include the notices required under the DOT, and

3   by misrepresenting that acceleration had occurred when it cannot yet have occurred under the

4   terms of the DOT.

5       QLS is correct, however, that "mortgagees and their beneficiaries, including mortgage

6   servicing companies, are not debt collectors subject to the FDCPA." *See Mansour v. Cal-Western*

7   *Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) (citing *Perry v. Stewart Title*

8   *Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates

9   conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing

10  company, or an assignee of a debt, as long as the debt was not in default at the time it was

11  assigned.")); *accord Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003).  Here,

12  QLS was acting on behalf of UAMC when it filed the NOD, and UAMC was not a post-default

13  assignee.  The Court therefore grants summary judgment on this cause of action.

14      **3.    Unfair and Deceptive Trade Practices Under NRS Chapter 598**

15      Plaintiff alleges violations of NRS section 598.0923(1) and (3) based on QLS'

16  conducting a business without a required license and violating a state or federal statute or

17  regulation relating to the sale or lease of goods or services.  Plaintiff theorizes that QLS violated

18  these sections of the NRS by sending Plaintiff the deficient NOD.

19      QLS correctly notes that because it was not acting as a debt collector, it did not need to be

20  licensed as one.  It also notes that "[s]ecuring or collecting debts or enforcing mortgages and

21  security interests in property securing the debts" does not constitute "doing business" in Nevada.

22  *See* Nev. Rev. Stat. § 80.015(h).  The Court therefore grants summary judgment on this cause of

23  action.

24      **4.    Unfair Lending Practices Under NRS Chapter 598D**

25      Plaintiff alleges violations of NRS section 598D.100 because Defendants allegedly made

1    the loan to Plaintiff without determining she had the ability to repay it. In addition to noting that

2    the pre-2007 version of the statute applies in this case, QLS argues that the statute of limitations

3    has run and that there is no successor liability under the statute. Plaintiff indeed does not allege

4    that movant QLS was the lender. The cause of action is implausible as against QLS for this

5    reason alone. Furthermore, this statutory cause of action is time-barred, because the present

6    action was filed on May 24, 2010, more than three years after the loan was made on November 3,

7    2006. *See* Nev. Rev. Stat. § 11.190(3)(a). The allegations in the Complaint are also insufficient.

8    Plaintiff received the present mortgage on or about November 3, 2006. Section 598D.100 was

9    amended in 2007, with an effective date of June 13, 2007. *See* 2007 Nev. Stat. 2844–46.

10    Therefore, the pre-2007 version of the statute applies to the present case. The prior statute,

11    which applies here, made it actionable if a lender made "a home loan to a borrower based solely

12    upon the equity of the borrower in the home property and without determining that the borrower

13    has the ability to repay the home loan from other assets . . . ." Nev. Rev. Stat. § 598D.100 (2006).

14    The current statute broadens the protection given to consumers by making it actionable when a

15    lender knowingly or intentionally makes "a home loan . . . without determining, using any

16    commercially reasonable means or mechanism, that the borrower has the ability to repay the

17    home loan." Nev. Rev. Stat. § 598D.100 (2010). Plaintiff has not alleged facts indicating a

18    violation of either version of the statute but has simply alleged in conclusory fashion that

19    Defendants violated it. The Court grants summary judgment on this cause of action.

20         **5.**      **Quiet Title**

21         Plaintiff seeks to quiet title to the Property under NRS section 40.010. She alleges that no

22    Defendant owns the debt or has standing to sue her on the note or foreclose on the Property.

23    QLS notes that "plaintiff is not entitled to a free home," which is essentially the conclusion

24    Plaintiff asks the Court to reach. Although Plaintiff's theory that the use of the MERS system

25    invalidates all loans and security interests against the Property is indeed baseless, this fact does

1  not necessarily make any quiet title action whatsoever impossible. Plaintiff could obtain a much

2  narrower declaration, however, that her title to the Property is superior to that of one or more

3  Defendants'. *See* Nev. Rev. Stat. § 40.010. ("An action may be brought by any person against

4  another who claims an estate or interest in real property, adverse to the person bringing the

5  action, for the purpose of determining such adverse claim.").

6      Moreover, a quiet title action is merely a species of declaratory judgment action and is

7  therefore inherently redundant with the first cause of action in this case. *See Kress v. Corey*, 189

8  P.2d 352, 364 (Nev. 1948) ("For many years prior to the adoption of [declaratory judgment]

9  statutes courts have nonetheless been rendering declaratory judgments, that is, the declaration of

10  the pre-existing rights of the litigants without any coercive decree, in such cases as quiet title

11  suits . . . ."). Redundant or not, Defendant is not entitled to summary judgment on this claim.

12  Plaintiff alleges that her title to the Property is superior to that of Defendants' based on various

13  defects in foreclosure, and at least one such defect that Plaintiff has identified—QLS' failure to

14  comply with notice requirements in the NOD—survives summary judgment. Success on this

15  cause of action would neither discharge the debt nor invalidate the security interest but would

16  simply result in a declaration that unless and until foreclosure is properly carried out, Plaintiff

17  holds superior title to the Property as against one or more Defendants. With this understanding,

18  the Court denies summary judgment on this cause of action.

19                                        **CONCLUSION**

20      IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 9) is DENIED.

21      IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 8) is

22  GRANTED in part and DENIED it in part. The motion is GRANTED as to all causes of action

23  except declaratory judgment and quiet title.

24      IT IS SO ORDERED.

25  Dated this 29th day of December, 2010.

ROBERT C. JONES
United States District Judge